No. 6359.

·CITY OF NEW ORLEANS VS. NEW ORLEANS CANAL AND BANKING COMPANY.

The return of the city tax assessor, setting forth the amount of the taxable capital of a banking corporation, will be held as true, until the contrary has been shown by the bank.

When a bank claims that a portion of its capital is invested in United States bonds, stocks, or currency, it must show affirmatively, the exact amount of its capital so invested. Otherwise, its capital thus invested will not be exempt from taxation.

The mere fact that at various periods during the year the tax is assessed, the bank "held" large amounts in United States currency, will not exempt its capital from taxation to the extent of those amounts, unless the bank proves that the currency so " held" was a part of its capital.

While the ordinary deposits of United States currency (or national bank notes), in a bank by its customers enter into, and form a part of its *assets*, they at the same time create liabilities of the bank, and thus offset themselves as assets. Such deposits therefore do not constitute a portion of the *capital* of a bank, and hence the bank can not claim that its capital shall be exempt from taxation to the amount of such deposits.

The capital of a bank which is subject to taxation, as capital, is made up of the balance of its assets remaining after deducting its debts, that portion of its assets exempt from taxation, and that portion which is taxed under another name than capital.

United States currency, and national bank notes belonging to a bank, although non-taxable, are a part of its assets, and in ascertaining the real amount of its taxable capital, such currency, and notes, must be held as compensating the debt due depositors, and thus, *pro tanto*, extinguishing the liability of the bank.

APPEAL from the Superior District Court; parish of Orleans. *Lynch, J.*

*S. P. Blanc*, Assistant City Attorney, for plaintiff and appellee.

*Finney & Miller*, for defendant.

The opinion of the court was delivered by

SPENCER, J. The city of New Orleans sued the defendant Canal Bank, for a tax of one and one half per cent on its capital not invested in real estate. The value of such capital is assessed at the sum of $700,000, making the amount of tax $10,500. There was judgment final on default in favor of the city and the bank appeals. The case comes up on a statement of facts, of which the following are those material to the issue :

"5th. It is admitted that the proper printed forms to be filled up with. items of taxable property were duly served by the assessor upon the president of the defendant bank, and that he returned it filled and signed and that it showed no taxable capital."

"6th.  That the capital of the defendant paid up is $1,000,000, of which $200,000 is invested in real estate and taxed as such, and that it held from first February to first July 1875 the amounts of "greenbacks" and national currency indicated by Exhibit 'Z' hereto annexed."

The Exhibit "Z" shows the amount of greenbacks and national currency respectively held by the bank for each day from first February to first July—the dates between which the law requires the assessment to be made.  The amounts fluctuate in "greenback" between $1,535,000 and $762,000, and in national currency from about $400,000 to $85,000.  There was on hand June 30 $762,000 in "greenbacks" and $158,000 in national currency—making total $920,000.

It is conceded by both parties that whatever part of the capital of the bank, was invested in United States, stocks, bonds and currency, is by the laws of the United States exempt from taxation.

The defendant on whom lay the burden has offered no proof that any part of the capital of said bank was so invested.   The admission in the statement of facts is that over and above the amount $200,000, invested in real estate, the bank had a paid up capital of $800,000 *and that it held* from first February to first July 1875, the amounts of greenbacks and national currency indicated by Exhibit "'Z.'"

It is not shown that the currency thus "held" *was its capital, or any part thereof.*  The Exhibit shows that at several periods between first February and first July, it "held" as much as $1,750,000 of currency of both kinds.   There must have been at these times $950,000 of deposits, as the bank only had $800,000 of capital uninvested in real estate.  Are we to presume that the bank had loaned its "deposits," and kept its "capital," when on thirtieth June it only held $920,000 of currency?  The counsel for defendant assume that such was the fact, but there is no proof of it, and we think the fairer presumption would be that it loaned or used its "capital" and kept its "deposits."  Nor does the fact that the president in his return reported no taxable capital materially affect the case, because it is fully offset by the fact that the assessor, (who under the law is empowered as a public officer to decide primarily) reported the bank as having $700,000 of taxable capital.  The presumption is that his report is true until disproved.  We find no sufficient proof of the error to justify us in reversing the judgment of the court *a qua.*  If the bank's capital was invested in United States bonds or currency and thereby exempt, the fact of such investment should have been affirmatively proved and not left to inference and doubt.  Where one claims the

City of New Orleans vs. New Orleans Canal and Banking Company.

benefit of an exemption, or that he is within an exception, it is his duty and the *onus* is on him, to make the facts appear clearly and distinctly • upon which he rests his claim.

It is therefore ordered adjudged and decreed that the judgment appealed from be affirmed with costs of both courts.

## On Rehearing.

The opinion of the court was delivered by

Egan, J. Since the former hearing of this cause the evidence has been supplemented by consent of counsel by the following which is accepted by both parties " as a correct statement of the average condition of the bank during 1875," the tax for which year is the matter in controversy:

*Statement of the Affairs of the New Orleans Canal and Banking Company on Monday, June 28, 1875.*

| | | | |
|---|---|---:|---:|
| 1. | Real estate | $182,516 | 85 |
| 2. | Stocks | 8,228 | 35 |
| 3. | Taxes paid | 14,431 | 65 |
| 4. | Suspended debts | 54,740 | 80 |
| 5. | Foreign and domestic bills protested | 26,949 | 73 |
| 6. | Notes and bills discounted | 1,833,146 | 41 |
| 7. | Foreign and Domestic exchange | 919,996 | 51 |
| 8. | Interest due on loans on call | 3,349 | 47 |
| 9. | City seven per cent gold bonds ($50,000) | 25,750 | 00 |
| 10. | Cash items— | | |
| 11. | Gold.....................$32,419 80 | | |
| 12. | Legal tender.....................974,777 17 | | |
| 13. | Checks sent to Clearing-House.........172,409 73 | | |
| | | 1,179,606 | 70 |
| | | | |
| | | $4,248,716 | 47 |
| 14. | Capital stock.....................$1,000,000 00 | | |
| 15. | Profit and loss | 99,694 | 00 |
| 16. | Dividends unpaid | 46,556 | 00 |
| 17. | Individual depositors | 3,044,957 | 19 |
| 18. | Foreign banks and banking | 48,061 | 78 |
| 19. | Circulation | 9,447 | 50 |
| | | $4,248,716 | 47 |

The amount invested in real estate, and which can not of course be ·taxed as *capital*, because taxed as real estate, appears from this statement to be $182,516 85, or $17,483 15 less than the amount allowed by

the assessor on this account, so that, taking it from the original capital of $1,000,000, there would be left $817,483 15 *of the original capital.*

It is claimed by the defendant and may be, for the purposes of this case, conceded that the bank is not taxable upon its deposits because they represent not assets but liabilities and form no part of its capital proper. Does it, however, follow that it is not taxable *on its otherwise taxable assets,* because it owes at the time more to its depositors than it has funds in its vaults to meet on demand? If so, then the most solvent bank in the country, which by good management or good fortune has doubled its orignal capital, and by its charter or the consent of its stockholders (otherwise given) declares no dividend until the end of a term of years or until its final liquidation, but keeps reinvesting for profit its acquisitions as well as its original capital, would be exempt from taxation on that account if it had not always in its vaults the means of immediate payment of its deposits, when they equal or exceed the original capital, and we need go no further in the inquiry. This, however, is not pretended in the case at bar, in which the deposits or rather *the amount due to the depositors* is shown to be over three times as much as the original capital invested. The truth is that while deposits with a bank *constitute to that extent debts* or liabilities, *all the assets* of the bank, *no matter of what they consist,* provided only they be available, must be deducted from the amount of the deposits before it can be ascertained *how much,* if any, its capital stock has been diminished. Now, it needs no argument to demonstrate that deposits are made in whatever currency is accepted or created as a circulating medium at the time, say in the case at bar in legal tender notes of the United States, which are themselves exempted by law from taxation. Suppose then that three millions of dollars was so deposited with the defendant and that it had an equal amount of legal tender notes with which to meet the call of its depositors, will it be urged that because those notes are themselves exempt from taxation they should be counted and considered no part of the assets of the bank, notwithstanding they furnish the means of immediate redemption of its liabilities on this account, and that although the bank should do, what in law and good faith it is bound to do, and so long as it continues business must do—that is, should extinguish its liability for deposits by the use of the legal tender notes in its vaults; that its capital represented by the remainder of its assets, however large, and though in such form as not to be themselves non-taxable, shall not be taxed simply because its deposits being debts and not capital and its legal tender notes, which are exempt by the terms of the law, when added together aggregate an amount equal to or greater than the remaining assets of the bank, and therefore show an absorption of the

total capital? The fallacy of this reasoning becomes at once apparent when we see that in the case put the bank might be able to repay its stockholders the amount of the capital stock and a large profit or dividend besides from other resources, after redeeming its entire deposits with the legal tenders which formed part of its available assets.

It is obvious from the statement furnished by the defendant and accepted by the plaintiff that the former invested its capital in something more than and other than, greenbacks or legal tenders, and it is this excess, after deducting such property as is taxed in other forms, which the city claims the right to tax. Let us put the case in another form to test the correctness of this claim. The paid-up capital stock of the bank is one million dollars. On the faith of this and owing to the public confidence inspired by the character of its managers, three millions of dollars in greenbacks are deposited with it the moment it is opened for business, and that before it has had opportunity to invest or part with one dollar of its capital the whole amount of these deposits is recalled; now, according to the argument of defendant's counsel, you must add the exempted greenbacks to the exempted debts due the depositors, and thus make up a sum of exemptions of six millions of dollars, instead of permitting the one to do, as it does in point of fact; i. e., offset or pay the other. In the case put the bank would be left with its original capital (which is taxable by the very terms of the law) undiminished in the smallest degree, and shall not be taxed to the extent of a single dollar; and yet this would be the necessary consequence of the argument and of the reasons for exemption set up by the defendant's counsel.

The fact that the original capital of the bank, instead of being invested as in the case put, is invested in or represented by available securities which *are not exempted from taxation, provided they be not themselves taxed in another form,* only makes it come more strictly within the law subjecting it to taxation.

To make good the argument it is necessary that the entire capital of the bank should be invested in greenbacks *and nothing else* and that it should have no other means of redeeming its deposits.

Now, it may be conceded as before remarked for the sake of the argument, that neither deposits nor greenbacks should be counted in ascertaining whether and how far the defendant is taxable on its capital. But as the latter afford *pro tanto* a means of paying the former, *on this theory* the balance must be struck between them. The statement of the defendant, which is accepted by the plaintiff, shows what are put down as assets, $4,248,716 47; from which deduct amount due depositors, $3,044,957 19, less legal tenders, $974,777 17 as stated, equal to $2,070,-180 02, and we have a balance of $2,178,536 45. But as the same legal tenders, already used to offset so much of the debts due depositors, also

goes to make up the sum of the assets, they must be deducted from this balance, which leaves still.................................$1,203,759 28

From this deduct—

Amount invested in real estate and taxed as
   such.......................................$182,516 85
Taxes paid, which are not assets............. 14,431 65
Suspended debts, as per statement.......... 54,740 80

  Aggregating........................................ 251,689 30

Which taken from the last balance of assets leaves still...: $952,069 98

Deduct further amount charged to profit and loss, $99,694; amounts due foreign banks and banking, $48,061 78; and amount of circulation, $9447 50; aggregating $157, 204 28, and we would still have a balance of $794,865 70, or $94,865 70 more than the amount for which the bank was assessed; add to this the suspended, but not necessarily non-collectible debts and not put down as such, which amount as per statement to $54,740 80, and we have an excess beyond assessment of $149,606 50, from which, treating it as a debt, deduct if you will amount of dividends unpaid, $46,556, and we have still an excess of $103,050 50. But in fact dividends are not properly debts, but only shares of profits; so that, even accepting the theory of the defendant's counsel, that "the capital of a bank like the capital of a merchant or individual consists *of the value of its assets after deducting the amount of its liabilities*, no error to the prejudice of the bank has been committed. To arrive at any other conclusion we would have to eliminate from its assets those which are most available and daily used to redeem its deposits; *i. e.*, the currency in its vaults, although it may equal or even exceed those deposits; we should not only have to do this, but to go further and hold as insolvent a perfectly solvent bank, which, according to its own counsel, "declares annual dividends," and which, according to the statement furnished from its own books, had at its date declared a dividend of which $46,556 remained still unpaid, and which dividends, in the very nature of things, are only derived and derivable from the profits in money on the stock invested, to say nothing of the actual value of its property and assets in other forms. It has, however, been expressly decided by this court that all moneys deposited in bank otherwise than as special deposits are its property, *in other words form part of its assets* (see 10 An. 343, and same 346), in other words its means of meeting its liabilities, whether to depositors or other persons, and also of paying any dividends or distribution of profits to its shareholders.

If those deposits or other funds which may be found in the vaults of the bank consist of non-taxable government notes the utmost limit of the decisions, both of our State courts and those of the United States to

NEW ORLEANS, DECEMBER, 1877.                    857

City of New Orleans vs. New Orleans Canal and Banking Company.

which we have been referred by the able and experienced counsel for the defense is that *so much* of the capital of the bank as is represented by such non-taxable notes is itself non-taxable, *and not that all its capital, no matter how invested,* is non-taxable. In one of those cases, reported in 9 Wallace, p. 357, the court said: " This capital may consist of cash or of bills and notes discounted and of real estate combined with them," precisely the case at bar, and again, " the *whole of it* may be invested in bonds of the government or in bonds of the State or in *bonds and mortgages,*" and a " tax upon this capital is a tax upon the bank."

In Bank of Commerce vs. New York, 2 Black, 620, a portion of the capital of the bank was invested in real estate and the balance in stocks, bonds, and securities of the United States, and it was held " *that such portion as was invested in government securities was not liable to taxation by the State.*" In the Bank of New York vs. Supervisors, 7 Wallace, 26, the court *maintained the exemption of so much* of the capital of the bank as was invested in treasury notes or greenbacks.

We are also referred to the case of Home Mutual Insurance Company vs. City of New Orleans, 20 An. 447, and Cooley on Taxation, p. 164, No. 1, as authority for the proposition that it is the actual and real capital of a corporation represented by the property in which it has been invested which is the subject of taxation, and not its merely nominal capital; and that if the capital be invested in non-taxable securities it is not taxable. That the plaintiff has followed the rule thus laid down so far at least as to endeavor to ascertain and to tax the actual and not the merely nominal capital of the defendant is apparent, as the tax is claimed not upon the nominal or fixed capital of the defendant of one million dollars, but upon its supposed actual capital of seven hundred thousand dollars. Both parties seem to agree to this standard of assessment.

We have been referred by defendant's counsel to the case of Bailey vs. Clark et al, 21 Wallace, p. 284, for the proper interpretation of the term " capital " in matters of taxation. In that case the assessor claimed that not only the fixed capital of the defendants employed in banking should be taxed, but that all moneys borrowed temporarily by them, from time to time, in the course of their business formed part of their capital stock, and was liable as such to taxation, and the court held that it was not.

The same principle is embodied in act of Congress passed in 1872, 17 Stat. at Large, p. 256, in regard to the tax imposed by the government of the United States, which is referred to by Mr. Justice Field in the case quoted. That learned judge gives a somewhat different interpretation of the meaning of the term " capital " in matters of taxation as applied to corporations, and one which is not exactly reconcilable with that announced in the twentieth Annual case and the authori-

858          SUPREME COURT OF LOUISIANA,

City of New Orleans vs. New Orleans Canal and Banking Company.

ties before cited. He says, in the twenty-first Wallace case, that "when used with respect to the property of a corporation or association the term has a settled meaning; it applies only to the property or means contributed by the stockholders as the fund for the business or enterprise for which the corporation or association was formed;" and again: "We are satisfied that the term as used in the statute was intended to embrace only the fixed capital employed in the business of banking as distinguished from deposits and temporary loans made in the regular course of business." Burroughs on Taxation, p. 654, announces the same doctrine.

It is, however, needless for the purposes of the present case to attempt to reconcile these diverse definitions of what constitutes "capital" as an object of taxation, as the city concedes by not taxing it that the amount of fixed capital paid in by the stockholders is not the standard and only claims the right to tax the defendant on an amount less than that fixed capital by three hundred thousand dollars; a [concession of which the defendant can not complain and against which no argument is urged based upon that ground.

This is, however. no longer an open question. The mode of assessment adopted in this case has prevailed in Louisiana since 1830, when that eminent Judge Porter announced it as the proper one in the case of the Louisiana Insurance Company vs. Morgan, 8 N. S. 631. Our predecessors reaffirmed that doctrine in the State vs. Louisiana Mutual Insurance Company, 19 An. 475, and in Mechanics' and Traders' Bank vs. City of New Orleans, 23 An. 307, in which case the precise point at issue in the case at bar was determined, the court saying that an entire exemption of its capital from taxation could not be claimed by the corporation, because *part of it was invested* in non-taxable securities. So also it is held under the revenue laws of the United States. See 21 Int. Rev. Rec. 353.

The case in 21 Wallace is relied upon by defendant's counsel simply to show that deposits are not liable to taxation, and it will be perceived from our computation that they have not been counted, but on the contrary *have been deducted* from the amount of "actual capital as represented by the property in which it has been invested" in accordance with the rule as announced by Judge Cooley, by the Supreme Court of the United States in the other cases cited, and by our predecessors in the twentieth Annual case. A review of all of these latter authorities makes it also apparent that while so much of the capital stock of a corporation as may be invested in non-taxable securities is itself non-taxable, even if that amounts to the whole of the capital of the corporation, it is not true that where such investment in non-taxable securities amounts to less than the amount of capital of the bank or other

corporation the excess represented by taxable property of any kind is non-taxable. Indeed, this is practically conceded by the defense in the case at bar by the claim set up that 'the defendant always had on hand greenbacks or legal tenders enough together with the value of the real estate which is taxed as such to make up the sum of defendant's capital.

The error and the fallacy in the position of the defendant is that by reason of this fact entire exemption from taxation on its capital is claimed, notwithstanding its own statement shows a large amount of property or of " capital invested in and represented by property" *which is not non-taxable* or exempt under any provision of law; we need only instance one or two items in the statement, *i. e.*, " notes and bills discounted, $1,833,146 41," " foreign and domestic exchange, $919,996 51," an item of itself not very far short of the whole amount of legal tenders for which exemption is claimed. The city has not claimed or sought in the assessment complained of to tax the deposits of the defendant, *i. e.*, the debts due by it to depositors, which are strictly not deposits but *only the consequences of deposits*. Nor has it sought to tax the non-taxable government legal tenders in the vaults of the bank, as will be seen by recurring to the tabular statement already made by us in this opinion. All that the city claims, and we think correctly, is that though themselves non-taxable, these legal tender notes shall be counted as they are used and designed to be used as assets of the bank *for the purpose of offsetting* and extinguishing *so much of its indebtedness to depositors*, and that because so much of the capital of the bank is invested in non-taxable government securities, it does not follow that the remainder, which is not so invested, shall not be taxable.

Any other view would double in favor of defendant the amount of exemption; the legal tenders would be counted twice for that purpose— once because they are legal tenders, and once because they represent so much of deposits—while, if there is any force in the latter ground of exemption, it would only result that the legal tenders were exempted *not twice over* but for the *two reasons* urged by defendant's counsel, either of which if well founded will suffice, but not both with the effect claimed to duplicate the exemption.

While we do not for· a moment argue, however, that deposits in the sense of *debts due depositors*, should be counted in estimating the real and actual capital of a bank for the purposes of taxation, neither are we prepared to give our assent to the doctrine that money in the vaults of the bank, *although derived from deposits*, is exempt from taxation for that reason alone. See Burroughs, p. 655, and Milton vs. Savings Institution, 17 Wallace, 109. On the contrary, we think it has been properly adjudged in the cases already cited to be the property of the bank.

We see no error in our former decree in this case, which is therefore ordered to be affirmed.